# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

**Codie J. TEVELEIN**
**Fireman (E-3), U.S. Coast Guard**

**CGCMS 24465**
**Docket No. 002-69-13**

**June 29, 2016**

Special Court-Martial convened by Commanding Officer, USCGC POLAR SEA (WAGB 11).
Tried at Seattle, Washington, on 22 March 2011.

| | |
|---|---|
| Military Judge: | CDR Amy E. Kovac, USCG |
| Trial Counsel: | LT Luke R. Petersen, USCG |
| Assistant Trial Counsel: | LT James P. Kaiser, USCG |
| Military Defense Counsel: | LT Ross S. Ericson, JAGC, USN |
| Appellate Defense Counsel: | LCDR Ted R. Fowles, USCG |
| Appellate Government Counsel: | CDR Vasilios Tasikas, USCG |

## ON RECONSIDERATION EN BANC[1]

McGUIRE, Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of making false official statements in violation of Article 107, Uniform Code of Military Justice (UCMJ); one specification of wrongfully using a controlled substance on divers occasions and one specification of wrongfully distributing a controlled substance, both in violation of Article 112a, UCMJ; one specification of wrongfully and falsely altering a military identification card and one specification of using Spice[2] on divers occasions, both in violation of Article 134, UCMJ. The military judge sentenced Appellant to reduction to E-l, confinement for ninety days, and a bad-conduct discharge. The convening authority approved only so much of

---

[1] Judges Kovac, Herman, and Chief Judge McClelland did not participate in this decision.
[2] "Spice" is a mixture of herbs and spices that is typically sprayed with a synthetic compound chemically similar to THC, the psychoactive ingredient in marijuana. It is often marketed as incense or "fake weed." *See* www.dea.gov/pr/multimedia-library/publications/drug_of_abuse.pdf, p. 64 (last accessed 12 April 2016).

the sentence as provided for confinement for sixty days and reduction to E-l in accordance with the pretrial agreement.

The panel opinion in this case[3] is vacated and replaced by this opinion.

Appellant submitted this case on its merits. The panel set aside Charge III, Specification 3 because the specification was defective. The Government requested reconsideration, *en banc*, which we granted.[4] We now review in particular, Charge III, Specification 3, which reads:

> In that Fireman Codie J. Tevelein, U.S. Coast Guard, Coast Guard Cutter POLAR SEA (WAGB 11), on active duty, did, at or near Seattle, Washington, on divers occasions from on or about 23 February 2009 to on or about 21 October 2010, use Spice, which conduct was prejudicial to good order and discipline in the armed forces.[5]

Here, the specification only asserts that FN Tevelein used Spice, and that such conduct was prejudicial to good order and discipline. We review whether this type of specification, as drafted, states an offense, and whether Appellant had fair notice that his alleged conduct was punishable. We discuss both issues and affirm the trial court result.

***Standard of Review***:

"Whether a specification is defective and the remedy for such error are questions of law, which we review *de novo*." *United States v. Ballan*, 71 M.J. 28, 33 (C.A.A.F. 2012) (citing *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006); *United States v. Girouard*, 70 M.J. 5, 10 (C.A.A.F. 2011)).

***Sufficiency of the Specification:***

This case requires us to resolve the conflict between prior panel decisions of this Court. Does a novel specification under Article 134 require the inclusion of words of criminality such

---

[3] *United States v. Tevelein*, CGCMS 24465, Docket No. 002-69-13 (C.G.Ct.Crim.App. 2013)
[4] Six of seven judges available for duty voted in favor of reconsideration, en banc, meeting the requirement of Rule 17(c).
[5] Charge Sheet, R. at 15.

as "wrongful" or "unlawful" to describe the conduct at issue, as we found in *United States .v Hughey,*[6] or is the terminal element sufficient, as we held in *United States v. Farence*?[7] As more fully explained below, we hold that alleging the terminal element is sufficient.

The military is a notice pleading jurisdiction.[8] In *United States v. Sell*, the U. S. Court of Military Appeals (now, the Court of Appeals for the Armed Forces) held that:

> The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.[9]

An Article 134(1) disorder has two elements: (1) That the accused did or failed to do certain acts; and (2) That, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces.[10] Here, the specification alleged that the Appellant "did…use Spice" to establish the first element, and the specification alleged that, under the circumstances, this conduct was to the prejudice of good order and discipline.[11] Thus, we conclude that the test set forth in *Davis* and *Sell* has been met.

The panel opinion held that Specification 3 of Charge III failed to state an offense because it lacked words of criminality. Although there is some support in military justice jurisprudence for this position with regard to drug offenses,[12] and in other contexts,[13] it must be noted that much of this precedent was in the days before the enactment of Article 112a for drug offenses, and before the Court of Appeals for the Armed Forces made clear in *Fosler*[14] that the

---

[6] *United States v. Hughey,* 72 M.J. 809 (C.G.Ct.Crim.App.2013).

[7] *United States v. Farence*, 57 M.J. 674, 676-677 (C.G.Ct.Crim.App.2002).

[8] *United States v. Sell*, 3 U.S.C.M.A. 202, 11 C.M.R. 202 (1953).

[9] *Id.*, 3 U.S.C.M.A. 202, 206, 11 C.M.R. 202, 206.

[10] *United States v. Davis*, 26 M.J. 445, 448 (C.M.A. 1988).

[11] Charge Sheet, R. at 15.

[12] *See, e.g., United States v. Brice*, 38 C.M.R. 134 (C.M.A. 1967); *United States v. Robinson*, 38 C.M.R. 141 (C.M.A. 1967).

[13] *See, e.g.*, *United States v. Acosta*, 41 C.M.R. 341 (C.M.A. 1970); (cohabitation); *United States v. Jones*, 42 C.M.R. 282 (C.M.A. 1970); and *United States v. Priester*, 4 C.M.R. 830 (C.M.A. 1952); (Article 128 offenses).

[14] *United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011).

terminal element must be specifically alleged in an Article 134 specification.[15] In the days before the enactment of Article 112a for drug offenses, and before the *Fosler* decision, where it was not considered necessary to allege the terminal element, military courts concluded that, for an act that was not in itself an offense, words importing criminality were a requirement, and if lacking, the specification was deficient.[16]

Central to our earlier opinion was a conclusion that the words of the terminal element, *i.e.*, that conduct was prejudicial to good order or discipline or service discrediting, were not words of criminality. Such a conclusion is not consonant with *Davis*, in which the court equated the terminal element language of Article 134 with words of criminality: "We can see no harm in alleging criminality in terms of the provision of Article 134 which made the conduct wrongful, rather than by using a general allegation that appellant's activity was "wrongful" or "unlawful."[17] The *Davis* court distinguished *Brice*, by pointing out that the specification at issue in that case contained neither the terminal element, nor words of criminality.[18] This court acknowledged the *Davis* analysis in *United States v. Farence*:[19] "Stated differently, the words "prejudicial to the good order and discipline of the armed forces are, without more, "words importing criminality" sufficient to support a specification alleging acts that would not otherwise constitute a crime."[20] While acknowledging that military case law on this point "has been at times unclear,"[21] we endorse the principle enunciated in *Davis,* and applied in *Farence*, that the words of the terminal element pled in an Article 134 specification constitute words of criminality sufficient to support a specification alleging acts that would not otherwise constitute a crime. In

---

[15] *Id.*, at 233.

[16] *See, e.g., Brice, supra*, note 12, 38 C.M.R. 134, 138; *citing United States v. Tindoll*, 36 C.M.R. 350 (C.M.A 1966).

[17] *Davis*, *supra*, note 10, 26 M.J. at 449; accord *United States v. Farence*, 57 M.J. 674, 676-677 (C.G.Ct.Crim.App.2002). While *Davis* and *Farence* each cited the *Brice* text (indicating that words of criminality are a requirement, and if lacking, the specification is deficient; *Davis*, 26 M.J. at 447-448.), the *Davis* court continued to reason and concluded that the *Sell* test was adequate, and that the terminal element could constitute words of criminality. *Davis,* 26 M.J. at 448, 449.

[18] *Id*.

[19] *United States v. Farence*, 57 M.J. 674 (C.G.Ct.Crim.App.2002).

[20] *Id.*, at 677.

[21] *United States v. Fosler*, 70 M.J. 225, 230-231 (C.A.A.F. 2011), *citing United States v. Choate*, 32 M.J. 423, 427 (C.M.A. 1991). *Fosler* makes clear that words of criminality "speak to mens rea and the lack of a defense or justification, not to the elements of the offense," and further states that words of criminality may be required in an Article 134 specification, "depending on the nature of the alleged conduct." *Fosler*, 70 M.J. at 231. What remains elusive in military justice jurisprudence is precisely which circumstances require additional words of criminality. We need not decide that issue here, as we find that, in this specification, all of the elements are alleged.

doing so, we overrule *United States v. Hughey*, 72 M.J. 809, 813, 814 (C.G.Ct.Crim.App.2013)[22] in which a panel of this court reached a contrary conclusion.

Where, as here, the specification at issue "contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him . . . shows with accuracy to what extent he may plead a former acquittal or conviction" *Sell*, *supra*, note 8, the specification is legally sufficient.

*Notice:*

Although the specification was sufficient to apprise Appellant of what he needed to defend against, there is a second notice issue: Did Appellant have notice that the conduct he was engaged in was criminal?  It is well settled that conduct that is not specifically listed in the Manual for Courts-Martial (MCM) may still be prosecuted under Article 134. *United States v. Saunders,* 59 M.J. 1, 6 (C.A.A.F. 2003) (citing *United States v. Vaughan,* 58 M.J. 29, 31 (C.A.A.F. 2003)).  However, due process requires that a person have 'fair notice' that an act is criminal before being prosecuted for it. *Saunders*, 59 M.J. 1, 6; *citing Vaughan*, 58 M.J, 29, 31. Potential sources of fair notice include federal law, state law, military case law, military custom and usage, and military regulations. *Vaughan,* 58 M.J. at 31.  The issue of fair notice was not raised by Appellant at trial where he pled guilty to the specification or on appeal.  When not objected to at trial, defects in a specification are reviewed for plain error.[23]

Under plain error review, "before an appellate court can correct an error not raised at trial, there must be: (1) "error," (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *United States v. Cotton*, 535 U.S. 625, 631 (2002); *citing Johnson v. United States*, 520 U.S. 461, 466-467 (1997).  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness,

---

[22] *United States v. Hughey*, 72 M.J. 809, 813, 814 (C.G.Ct.Crim.App.2013).
[23] *United States v. Warner*, 73 M.J. 1, 3 (C.A.A.F., 2013); *citing United States v. Cotton*, 535 U.S. 625, 631, 122 S.Ct. 1781, 1785 (2002).

integrity, or public reputation of judicial proceedings. *Cotton*, 535 U.S. 625, at 631-632; *citing Johnson v. United States*, 520 U.S. 461, at 467.[24]

However, Article 59(a), UCMJ, 10 U.S.C. § 859(a), provides that, "[a] finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." The Court of Appeals for the Armed Forces, in *United States v. Powell*,[25] has clarified that the military rules are different from the federal rules analyzed in *Olano*[26] and *Cotton*,[27] and that Courts of Criminal Appeals, in carrying out their mandatory review of the record under Article 66(c), UCMJ, 10 U.S.C. § 866(c), are distinct from appellate courts carrying out discretionary review.[28]

Thus, in military practice, plain error analysis requires a showing that: (1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right."[29] Here, the Appellant entered into a stipulation of fact, and admitted that he used Spice to get high, for its mind-altering effects, that he expected the effects to be similar to that of marijuana, a Schedule 1 controlled substance, that he used Spice with other Coast Guard members, and in front of other Coast Guard members, in Coast Guard leased housing, and that he used Spice in part because he knew it would not be detected by an urinalysis test. PE 1, p. 5-6; R. 99-126. Under these circumstances, we conclude that the Appellant had notice that his conduct was punishable, and we cannot find it was plain error for the military judge to accept his plea of guilty to specification 3 of Charge III.

*Appellate Delay:*

The parties have petitioned the court for a grant of relief due to the appellate delay in deciding this case.[30] There has been significant appellate delay since the motion for en banc

---

[24] Accord *Warner*, 73 M.J. 3, *citing United States v. Wilkins*, 71 M.J. 410, 412 (C.A.A.F. 2012).

[25] 49 M.J. 460, 463-464 (C.A.A.F. 1998).

[26] *United States v. Olano*, 507 U.S. 725, 731 (1993); (analyzing plain error under Federal Rule of Criminal Procedure 52, and referred to in *U.S. v. Powell*).

[27] *United States v. Cotton*, 535 U.S. 625, 631 (2002).

[28] *United States v. Powell*, 49 M.J. at 464 (C.A.A.F. 1998); *See also United States v. Riley*, 47 M.J. 276, 279-280 (C.A.A.F. 1997); (applying the Article 59(a) standard for the third prong of the plain error analysis for prejudice, rather than the formula of *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A. 1986)).

[29] *United States v. Humphries,* 71 M.J. 209, 213-215 (C.A.A.F. 2012); *citing Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011).

reconsideration was granted.  The Court of Appeals for the Armed Forces set forth the framework for review of delays in post trial and appellate review in *United States v. Moreno*,[31] and applying the factors set forth in *Barker v. Wingo*.[32]  We acknowledge that the appellate delay in this case is facially unreasonable, and that there is no adequate justification.  While we find no particularized showing of prejudice, we find that, balancing the other *Barker* factors, the delay in this case is such that tolerating it would "adversely affect the public's perception of fairness and integrity of the military justice system,"[33] and we grant relief.  We will disapprove the reduction in rate of one paygrade.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ, 10 U.S.C. § 866.  Upon such review, the findings are determined to be correct in law and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty are affirmed.  In view of our finding of unreasonable appellate delay, only so much of the sentence as provides for confinement for sixty days and reduction to E–2 is affirmed.  We order the preparation of a revised Promulgating Order consistent with this opinion.

Judges Clemens, Havranek, Judge, Norris, and Spolidoro concur.

BRUCE, Judge (concurring):

This case is before the Court *en banc* following a request for reconsideration of a panel decision that found the specification alleging use of "Spice" in violation of Article 134, UCMJ, defective.  I agree with the panel that under the circumstances of this case, the specification was defective because it did not allege that the use of "Spice" was wrongful.

As the majority opinion notes, "Spice" "is often marketed as incense or 'fake weed.'" *United States v. Tevelein*, CGCMS 24465, Docket No. 002-69-13, at 1 (C.G.Ct.Crim.App. 2016).  At the time of Appellant's court-martial, "Spice" was not listed as a controlled substance.

---

[30] *See* Joint Motion of Expedited Review and Joint Request for Relief, 17 May 2016.
[31] 63 M.J. 129 (C.A.A.F. 2006).
[32]*Id.*, at 135; *Barker v. Wingo*, 407 U.S. 514, 530 (1972).
[33] United States v. Toohey, 63 M.J. 353 (C.A.A.F. 2006).

Accordingly, it was legal to possess "Spice" and "Spice" could be used lawfully, for example as incense. On the other hand, "Spice," like other substances such as glue or gasoline, can be abused or wrongfully used for its mind-altering effects, to produce a so-called high. The abuse or wrongful use of "Spice" is what the Government intended to prove was prejudicial to good order and discipline, and a crime in violation of Article 134, UCMJ.

The defect in the specification is that it alleged simple use, rather than abuse or wrongful use. Under the circumstances of this case, I do not agree with the majority view that alleging the terminal element of prejudice to good order and discipline meets the need to allege words of criminality. It is possible to infer or understand that the Government is alleging prejudice to good order and discipline because the Appellant abused or wrongfully used "Spice," and in this case it appears that Appellant did understand that that was the crime alleged. However, simply alleging the terminal element is not generally sufficient to describe the criminal act of abusing or wrongfully using "Spice."

In *United States v. Rapert*, 75 M.J. 164 (2016), the Court of Appeals for the Armed Services (CAAF) discussed the United States Supreme Court case of *Elonis v. United States*, 575 U.S. ____, 135 S.Ct. 2001(2015). CAAF quoted the Supreme Court's observation that: "'Federal criminal liability generally does not turn solely on the results of an act without considering the defendant's mental state.' *Id*. at 2012." *Rapert*, 75 M.J. at 167. Then addressing the military offense of communicating a threat in violation of Article 134, UCMJ, CAAF found that the element of wrongfulness met the *mens rea* requirement for a crime as opposed to innocent conduct.

In the present case, the position that the terminal element sufficiently alleges words of criminality, goes against the precept that criminal liability does not turn solely on the results of the act without considering the accused's mental state. In order to prove the offense here, the Government had to prove that Appellant committed an act and that the act was prejudicial to good order and discipline. But, the result that the act was prejudicial to good order and discipline does not necessarily consider the Appellant's mental state. Even if it can be proved that an accused knew that his act would be prejudicial to good order and discipline, that would

not make an innocent act or the exercise of a lawful right criminal. The requirement for a culpable *mens rea* applies to the first element, the act committed by the accused. In this case, it was the intent to abuse or wrongfully use "Spice" to the prejudice of good order and discipline that made the use a crime. Because at the time of trial "Spice" was not a controlled substance and it could be used lawfully (as incense at least), there was nothing inherently unlawful about the simple use of "Spice."

In the majority's footnote 21, there is recognition that:

> . . . words of criminality may be required in an Article 134 specification, "depending on the nature of the alleged conduct." Fosler, 70 M.J. at 231. What remains elusive in military justice jurisprudence is precisely which circumstances require additional words of criminality.

*United States v. Tevelein*, CGCMS 24465, Docket No. 002-69-13, at 4 n.21 (C.G.Ct.Crim.App. 2016)

This is a case that requires additional words of criminality. Footnote 20 also recognizes that: "*Fosler* makes clear that words of criminality 'speak to mens rea and the lack of a defense or justification, not to the elements of the offense,' . . . ." Here, the alleged conduct, that Appellant used "Spice," encompasses innocent conduct, because "Spice" has innocent uses. Also alleging that the conduct was prejudicial to good order and discipline, is a necessary element, but it does not add much in terms of what about Appellant's conduct was criminal, rather than innocent, or what culpable state of mind the Government is alleging. Words of criminality in the specification would provide some assurance that the court-martial would not convict without considering whether Appellant had a culpable state of mind and whether his conduct might be innocent or justified.

Although the panel was correct in finding that the specification was defective, it erred in failing to test for plain error. *U.S. v. Brecheen*, 27 M.J. 67 (CMA 1988); *U.S. v. Watkins*, 21 M.J. 208, 209 (CMA 1986); *U.S. v. Nygren*, 53 M.J. 716 (C.G.Ct.Crim.App. 2000). Assuming there was error and the error was plain, Appellant was not prejudiced because the specification is not so defective that it "cannot within reason be construed to charge a crime," he did not challenge

the specification at trial, he pleaded guilty, had a pretrial agreement, satisfactorily completed the providence inquiry, and has suffered no prejudice. *Watkins,* 21 M.J. at 210. Accordingly, I concur in the affirmance of the conviction for use of "Spice" in violation of Article 134, UCMJ, and the sentence as modified by the majority opinion.


DUIGNAN, Judge (dissenting):

I stand by the rationale provided in this Court's original unpublished opinion, decided on 06 September 2013. *United States v. Tevelein*, CGCMS 24465, Docket No. 002-69-13 (C.G.Ct.Crim.App. 2013) [hereinafter *Tevelein I*]. In this *en banc* opinion, the majority reverses the original panel opinion of this Court and instead holds the Specification 3 of Charge III sufficient, despite omission of any words alleging the conduct "wrongful," and barely discusses that use of Spice was not prohibited by any lawful order, regulation, or statute at the time of the alleged offense. Moreover, in order to reach this result, the majority takes the additional step of reversing this Court's own recent decision in *United States v. Hughey*, 72 M.J. 809, 813-14 (C.G.Ct.Crim.App. 2013), *review denied* 73 M.J. 126, without the benefit of additional briefing on that matter.


As we stated in this Court's original opinion, "Conspicuously missing in this specification are any words of criminality, like 'wrongfully,' as was later used in the Stipulation of Fact submitted into evidence by the Government at trial." *Tevelein I, supra.* Simply, Appellant's use of Spice was not properly charged or noticed as being criminal conduct. No words of criminality were included in the specification. In a recently published opinion, this Court found such a defect fatal, holding that a specification alleging that an accused's statements were prejudicial to good order and discipline in the armed forces failed to state an offense under the general article, where it failed to include words of criminality. *United States v. Hughey*, 72 M.J. 809, 813-14 (C.G.Ct.Crim.App. 2013), *review denied* 73 M.J. 126; *see also United States v. Brice,* 38 C.M.R. 134, 138; 17 U.S.C.M.A. 336, 340 (1967); *United States v. Nygren*, 53 M.J. 716 (C.G.C.C.A. 2000). This case should be resolved under *Hughey*. However, recognizing the *Hughey* decision as otherwise controlling precedent, the majority *sua sponte* overrules *United States v. Hughey*, 72 M.J. 809, 813, 814 (C.G.Ct.Crim.App. 2013). *Hughey* controls the outcome

of this case, had the majority not reversed it without the benefit of notice and additional briefing. I would apply *Hughey*.

The majority further states, "Although there is some support in military justice jurisprudence for this position with regard to drug offenses, and in other contexts, it must be noted that much of this precedent was in the days before the enactment of Article 112a for drug offenses, and before the Court of Appeals for the Armed Forces made clear in *Fosler* that the terminal element must be specifically alleged in an Article 134 specification." *United States v. Tevelein*, CGCMS 24465, Docket No. 002-69-13, at 3-4 (C.G.Ct.Crim.App. 2016)(footnotes omitted).  However, the majority does not address the fact that Spice was not chargeable under Article 112a, because it was not a prohibited substance under the Uniform Code of Military Justice, the Schedule of Controlled Substances, or subject to any general order prohibiting its use at the time of the offense.  And just as some controlled substances or other intoxicating substances, such as alcohol, can be used lawfully, there was an open question at the time of Appellant's ingestion as to whether Spice was a prohibited substance.

The majority acknowledges that, "It is well settled that conduct that is not specifically listed in the Manual for Courts-Martial (MCM) may still be prosecuted under Article 134." *United States v. Saunders,* 59 M.J. 1, 6 (C.A.A.F. 2003), citing *United States v. Vaughan,* 58 M.J. 29, 31 (C.A.A.F.2003). However, due process requires that a person have 'fair notice' that an act is criminal before being prosecuted for it.  *Saunders*, 59 M.J. 1, 6; *citing Vaughan*, 58 M.J, 29, 31.  Potential sources of fair notice may include federal law, state law, military case law, military custom and usage, and military regulations. *Vaughan,* 58 M.J. at 31.  (Slip op. at 5).

The majority's reliance on "fair notice," without offering additional specifics to provide that fair notice, rings hollow.  A properly promulgated general order would have provided fair notice of criminal conduct.  But no general order was in force at the time of Appellant's use. The proper inclusion of Spice as prohibited controlled substance under Article 112a would have provided notice.  But Spice was not included in any schedule of prohibited or controlled substances at the time of this offense.  In short, no language or facts were included in the

specification that would provide notice why the conduct charged would have been unlawful. And as discussed earlier, the word "wrongfully" was not even used in the specification.

Our American legal system–including our military justice system–rests on the basic premise that those accused of crimes have adequate notice of the criminal conduct before being held criminally liable. The majority claims not only that the word "wrongfully" is not required, but that Appellant's plea to conduct that was not noticed as criminal is legally sufficient, because he pled guilty to use of Spice and admitted his conduct was to the prejudice of good order and discipline in the armed forces. But a plea to an Article 134 offense must be made by one having fair notice of the criminal conduct and with an understanding that the conduct was criminal at the time. *See United States v. Moon*, 73 M.J. 382 (C.A.A.F. 2014). There was no establishment that any notice was given that use of Spice was criminal at the time. And the fact that Appellant pled guilty to this specification does not preclude Article 66, UCMJ review by this Court. *See United States v. Powell*, 49 M.J. 464 (C.A.A.F. 1998) citing *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991). Moreover, the Court need not rely on waiver, if plain error is present, and, even in the absence of plain error, this Court need not apply waiver in the interests of justice. *United States v. Ngyen*, 53 M.J. 716 (C.G.C.C.A. 2000), citing *United States v. Claxton*, 32 M. J. 159, 162 (C.M.A. 1991).

"[A] charge that is defective because it fails to allege an element of an offense, if not raised at trial, is tested for plain error". *United States v. Ballan*, 71 M.J. 28, 34 (C.A.A.F. 2012), citing, *United States v. Cotton,* 535 U.S. 625, 631–32, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (rejecting precedent that defects in the indictment are jurisdictional and applying plain error review); *United States v. Sinks,* 473 F.3d 1315, 1320-21 (10th Cir.2007) (affirming that failure to allege an element of a crime does not affect a court's subject matter jurisdiction, but stating that plain not harmless error review applies). Here, the plea to the specification in question was made without adequate fair notice that the charged action was criminal at the time it occurred. Appellant's substantial rights were materially prejudiced, because he pled guilty to a specification lacking words of criminality to conduct that was not noticed as criminal at the time it occurred. This error is plain and requires reversal of the conviction to Specification 3 of Charge III.

Finally, the majority addresses the joint motion for Expedited Review and Joint Request for Relief made on 17 May 2016, raising the excessive appellate delay in this case. The original opinion of this court, *Tevelein I*, was issued on 06 September 2013. The *en banc* reconsideration of this case has been pending on the docket for more than two years. The appellate delay has been excessive, unreasonable, and unexcused. *See United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006). Meaningful relief is warranted. Sentence relief of reinstating one paygrade is minimal relief under these circumstances. Instead, I would disapprove the entire sentence.

For these reasons, I dissent.



For the Court,

YN2 Dominick M. Letourneau,
USCG
Acting Clerk of the Court